**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Leroy WALKER, Defendant-Appellant.**

**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Albert SCHLEICHER,
Defendant-Appellant.**

**Nos. 43841, 43874.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 20, 1982.
Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Tim Battern, Clayton, for Walker.

James W. Whitney, Jr., Clayton, for Schleicher.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Presiding Judge.

Leroy Walker and Albert Schleicher, as codefendants, were tried together and each was found guilty of the crimes of kidnapping, rape, and sodomy. Schleicher was also found guilty of the crime of attempted sodomy. Both defendants appeal from the judgment entered upon the jury verdict. The appeals have been consolidated.

Each of the defendants contend that the trial court erred in: 1) admitting certain photographs into evidence; 2) denying their motions for discovery of the victim's records at a methadone center; 3) denying their motions for severance; 4) failing to give MAI–CR 2.36 prior to the testimony of a doctor who had examined the victim; and 5) overruling an objection to a comment made by the trial court during voir dire. In addition, defendant Walker urges us to reverse on the ground that the State failed in its proof because the victim's testimony was so contradictory as to require corroboration and that there was no corroborative evidence. He also claims that the court erred in striking two of the veniremen.

Because defendant Walker attacks the sufficiency of the evidence, we shall first undertake a statement of the facts in the light most favorable to the State. *State v. Petrechko,* 486 S.W.2d 217 (Mo.1972).

In the fall of 1979, prosecutrix was under treatment for drug addiction. She made daily visits from her home in High Ridge,

Missouri to the methadone clinic on Olive Street near Vandeventer Avenue in the City of St. Louis.

On October 16, 1979, about noon, the prosecutrix was returning home from a visit to the clinic. She was driving south on Vandeventer Avenue when her car stalled on Vandeventer near Chouteau Avenue. While she was stalled, a pickup truck passed her. It turned around, came back and parked behind the stalled car. Defendant Schleicher got out of the truck and entered the passenger side of the stalled car. He said something about "getting" the prosecutrix. He ripped her blouse, pulled down her jeans and raped her. Another occupant of the truck let the air out of the left rear tire of the car she was driving. The driver of the truck then pushed the car forward causing damage to the car.

Defendant Schleicher then dragged the prosecutrix from the car and put her in the back of the pickup truck. Walker drove and Schleicher got into the back of the truck and raped the prosecutrix again while she was kicking, screaming and hitting at Schleicher.

The truck stopped in an alley and Schleicher went into a house. Prosecutrix was transferred to a blue automobile. When Schleicher returned, they drove off. The prosecutrix asked to get out of the car but was told that they were not through with her. Schleicher showed her some money and told her that he would give her $700.00 if she would not tell the police what happened.

They drove to a house the first floor of which was occupied by Walker's sister with whom he was temporarily staying. The defendants took the prosecutrix into the house past Walker's sister, Sandra Diaz, and Jesse Valdez, her fiance, and into the bedroom occupied by Walker. The prosecutrix was introduced to the two persons in the house. They noted that prosecutrix appeared to be nervous or frightened. Walker told his sister to stay in the kitchen. He and Schleicher then took the prosecutrix in his bedroom and locked the door.

At one time, prosecutrix came out of the bedroom and asked Ms. Diaz and Mr. Valdez their names and their address and telephone number. Walker came out of the bedroom and told the prosecutrix to get back in the room before she got hurt. After she went back into the room, Diaz and Valdez heard prosecutrix's voice begging to let her relax; to get off of her and saying "please quit." They heard prosecutrix scream four times and heard a thud that sounded like someone's head was hit against the headboard.

Prosecutrix testified that when she went back in the room, defendants removed her clothes. Then defendants removed their clothing. She saw tattoos on both of them. They forced her to have intercourse with each of them in turn while she screamed and kicked. When she refused to perform an act of sodomy, Walker raised her head and struck it on the headboard. He also struck her across the face on two occasions. Under this compulsion she did as she was told. The defendants kept her there for a number of hours.

When the three came out of the bedroom, the prosecutrix had blood on her face and her face was swollen and she limped. Schleicher went into the bathroom while Walker took prosecutrix to the automobile. When Walker went back into the house to see what was keeping Schleicher, the prosecutrix ran away.

We shall develop other facts as necessary to the understanding of the issues as they are discussed.

■ We consider first defendant Walker's contention that the court erred in failing to direct a verdict in his favor for the reason that prosecutrix's testimony was so contradictory and conflicting as to require corroboration in accordance with *State v. Phillips*, 585 S.W.2d 517 (Mo.App.1979).

Prosecutrix's testimony in the case was lengthy. Much of this testimony was corroborated by a number of different witnesses. Witnesses heard the defendants order prosecutrix to disrobe, heard her plead with them to leave her alone, heard her scream

and heard what sounded like the thud of a head being struck against the headboard of a bed. Ms. Diaz obtained a bottle of douche for prosecutrix at Walker's orders. When prosecutrix came out of the bedroom, she was bleeding about her face, her face was swollen, she appeared to be frightened and when given the opportunity, she fled. Ms. Diaz also testified that Walker ordered her to clean up the mess in his bedroom where she found the bed to be "messed up." There was blood, vaseline stains and seminal stains on the sheet. Photographs corroborated the prosecutrix's testimony with respect to tattoos on the bodies of the defendants. There were also photographs that showed the injuries to prosecutrix's face. Inasmuch as there was more than adequate corroboration, we need not decide whether corroboration was necessary. See *State v. Rogers,* 583 S.W.2d 293 (Mo.App. 1979).

■ Defendant Walker seeks a new trial based upon the action of the trial court in striking veniremen Schaeffer and Panhorst for cause. Defendant contends "that consideration of drug addiction is a legitimate criteria in weighing the testimony of witnesses and the exclusion of persons expressing general objections to drug addictions violates defendant's constitutional right to a full panel of qualified veniremen."

During voir dire the State sought to determine whether the jurors would be prejudiced against the State's case because the prosecutrix was addicted to narcotics. Mr. Schaeffer stated that he did not believe that addiction was a disease. When asked if he could try the case fairly he said "I think so." Then he said that he had a "little bit" of hesitation about it and then said, "I really don't think I could be a fair juror in the case" because of prosecutrix's addiction. He said he was not sure he could give the prosecutrix's testimony any weight or credibility. When asked if he could be fair to "both sides" he answered "[n]o."

During a long voir dire, Mr. Panhorst in effect said that he couldn't believe anyone who was drinking or was on drugs.

Defendant Walker relies upon *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) which held that exclusion of all members of a venire who have conscientious scruples against or who are opposed to capital punishment, but who did not state that they would automatically vote against the imposition of the death penalty irrespective of the evidence, was violative of the Sixth and Fourteenth Amendments to the Constitution of the United States in that it deprived defendant of an impartial jury panel and would deprive him of his life without due process of law. This opinion is probably more notable for what it does not hold. The court stressed that the case did not involve the right to challenge for cause when scruples against capital punishment would prevent the prospective juror from making an impartial decision as to the defendant's guilt. Further, it did not involve the right to exclude a juror who could never vote to impose or refuse to consider imposition of the death penalty.

We are not faced with the problem presented in *Witherspoon.* Here the two members of the venire indicated that they could not enter into their duties with a fair and open mind. If it could be said that the answers of these persons raise a doubt as to their ability to be fair, such doubt is resolved in favor of the trial court's ruling. The trial court did not abuse its broad discretion in striking these veniremen. *State v. Parris,* 506 S.W.2d 345 (Mo.1974).

The issues that follow are common to each of the defendants and will be consolidated for discussion.

■ The defendants contend that the trial court erred in admitting four photographs into evidence. The photographs show the defendants in the nude and display tattoos on their bodies including the genitalia. Defendants contend that the probative value of the photographs was outweighed by the "prejudice and inflammation" resulting from admission of the photographs when defendants had conceded the issue of identification.

In this case the prosecutrix testified that the defendants had distinguishing marks on their bodies and she described the tattoos each had upon his body. She was then asked to identify the photographs of the defendants in the nude showing the tattoos described by her. The defendants objected and attempted to stipulate as to identity of the defendants and that they had such tattoos. The stipulation was rejected by the State.

The admission of demonstrative evidence including photographs is a matter primarily within the discretion of the trial court. It is generally held that such evidence is admissible in a variety of circumstances among which are when it tends to identify the defendants or to corroborate the testimony of the party offering the evidence. *State v. Ward,* 569 S.W.2d 341, 345 (Mo. App.1978); *State v. Huddleston,* 462 S.W.2d 691 (Mo.1971).

The photographs used here corroborated the testimony of prosecutrix and identified the defendants. In spite of the offer to stipulate, the defendants subsequently introduced evidence tending to establish an alibi and in final argument urged that there was reasonable doubt that the defendants were present at the time and place of the crime. Walker's counsel, in his argument, attacked the prosecutrix's identification testimony, calling attention to inconsistencies in her descriptions of defendants.

The State has the heavy burden of proving defendant's guilt beyond a reasonable doubt and should not be unduly limited in the quantum of its proof. *State v. Ward, supra* at 345. This is especially true in this case. Even though defendants made a tenuous offer to stipulate that the defendants had the tattoos described by the prosecutrix, they vigorously attacked prosecutrix's credibility and her identification of the defendants.

We have reviewed the photographs and find nothing gruesome or especially revolting in them; they served the purposes of identifying defendants as the perpetrators of the crimes and, as defendant Walker would require, to corroborate prosecutrix's testimony. *State v. Ward, supra.*

■ Defendants contend that the court erred in denying their motions to compel the State to disclose records obtained by the State from the methadone clinic with respect to the prosecutrix.

The methadone clinic is a part of a federal program to rehabilitate persons addicted to narcotics. The legislation governing the program provides that patient records shall be confidential provided, however, the patient may consent to release portions of the record and courts may, in appropriate circumstances, order disclosure. 21 U.S.C. § 1175 and 42 U.S.C. § 4582.[1] The disclosure of patient records is governed by regulations promulgated under authority of the above statutes. Under the regulations, a patient may execute a written consent to disclosure. 42 C.F.R. § 2.31. The regulations further provide that a person obtaining such records by consent of the patient may not redisclose the information to another without specific written consent. 42 C.F.R. § 2.32(b). The revelation of the information to another is a criminal offense. 21 U.S.C. § 1175(f); 42 U.S.C. § 4582(f). In appropriate circumstances, courts are empowered to authorize disclosure which would otherwise be prohibited. 21 U.S.C. § 1175(b)(2), (c) and 42 U.S.C. § 4582(b)(2), (c). The criteria required by the regulations for disclosure of a patient's records by court order are: (1) disclosure must be sought by using a fictitious name for the patient unless the patient consents to the use of his real name; (2) notice must be given to the patient and the program in which the patient was enrolled of the request for disclosure to allow a response in accordance with local rules of procedure as well as an opportunity to appear and be heard; (3) if there is a hearing it must be held in the judge's chambers; (4) good cause must be shown and is determined by

---

1. All references to federal law and regulations are to those in effect at the time of trial, September, 1980.

weighing the public interests and need for disclosure against the injury to the patient, the treatment services and the patient-physician relationship; and (5) a need for disclosure must be demonstrated and if other competent evidence or sources of information are available, the court should ordinarily deny the application. 42 C.F.R. § 2.64 (1979).

In this case, the State had obtained consent of the prosecutrix to obtain some of the records. The State also obtained consent to disclose to defendants statements made by prosecutrix to personnel of the clinic that might be of assistance to defendants. The State disclosed to defendants that on October 17, 1979, prosecutrix stated she had been robbed and beaten two days before; that on October 18, 1979, prosecutrix stated that she had been raped, tortured and robbed by four men, two of whom had been captured; and that on October 23, 1979, prosecutrix stated that she had been nervous since October 16, when she had been sexually assaulted by two men in a five and one-half hour ordeal.

The trial court also reviewed the records that had been furnished to the State and determined that they contained nothing further that would assist defendants in their defense.

The motions for discovery sought an order from the court directed to the Circuit Attorney for discovery of "the complete records of the alleged victim [name omitted] from the Methadone Clinic on Olive Street" which were in the possession of the State.

The records that were in the possession of the State were not subject to disclosure by the State to a third person without consent of the patient. The portion of the records disclosed to the State with prosecutrix's consent bore an admonition required by the regulations, that the contents were not to be disclosed under penalty of criminal prosecution. 42 C.F.R. § 2.32(c) provides:

"Whenever information from patient records is needed by any person, such information must be obtained directly from the program maintaining such records and not from another person to whom disclosure thereof has been made, except where the initial disclosure was intentionally and expressly made for the purpose of the redisclosure ...."

Defendants' requests for disclosure were directed to the wrong party, the State. The method of obtaining disclosure, as set out above, was available to defendants.

Defendants, in any case, received all that the court could have ordered to be disclosed under the regulations after reviewing the records in camera.

The provisions of Rule 25.03(c) are not applicable to the circumstances of this case because of the restrictions placed upon disclosure by 21 U.S.C. § 1175, 42 U.S.C. § 4582 and the regulations promulgated under authority of those statutes. The trial court did not err in denying defendants' motions for discovery.

■ The defendants next contend that the court erred in failing to grant a severance of their trials because Rule 24.06 requires the court to grant a severance except when defendants are charged jointly "under the provisions of Sections 559.260, 559.270 or 563.230 RSMo" and the defendants were not charged with violations of the above statutes.

Prior to January 1, 1979, the crime of rape was to be found in §§ 559.260 and 559.270 RSMo 1969. Sodomy was made a crime by § 563.230 RSMo 1969. Under the criminal code which became effective on January 1, 1979, the above statutes on rape and sodomy were repealed and their substance was reenacted in §§ 566.030 and 566.060 RSMo 1978.

The crimes in this case were committed in 1979 and the case was tried in September of 1980. The Rules of Criminal Procedure were extensively revised during the year 1979, effective January 1, 1980. The rule here in question is substantially the same as former Rule 25.07. The essential portions of the rule as it was published in 1980 read as follows:

"(a) Any defendant jointly charged with one or more defendants with the

commission of any felony other than under the provisions of Sections 559.260, 559.270 or 563.230, RSMo, upon his motion made prior to the commencement of trial, shall be tried separately. In the absence of such a motion such jointly charged defendants shall be tried jointly or separately as the court in its discretion may order.

(b) When two or more defendants are jointly charged under the provisions of one or more of Sections 559.260, 559.270 or 563.230, RSMo, they shall be tried jointly or separately as the court in its discretion may order, unless there is evidence admissible against one or more defendants and not admissible against one or more other defendants, in which event, upon motion made prior to the commencement of trial by a defendant against whom the evidence is inadmissible the defendant or defendants against whom the evidence is admissible shall be tried separately."

The statutory references in Rule 25.07, the former rule, were repeated in Rule 24.06 instead of the new statutes on rape and sodomy. The statutes referenced in the rule were the statutes on rape and sodomy that were in effect prior to January 1, 1979.

An amendment was made to Rule 24.06, effective January 1, 1981, substituting §§ 566.030 and 566.060 for "559.260, 559.270 or 563.230."

At the time of trial in this case § 545.885 RSMo Supp.1981, as amended, had become effective.[2] Portions of § 545.885 pertinent to our consideration read as follows:

"1. When two or more defendants are jointly charged with the commission of the criminal offense of rape or forcible rape, sodomy or forcible sodomy, or an attempt to commit any of the aforesaid, the court shall order both or all defendants to be tried together, notwithstanding the provisions of section 545.880, and except as provided in subsection 2.

2. If it appears that a defendant or the state is substantially prejudiced by such joinder of defendants for trial together, the court may grant a severance of defendants upon a particularized showing of substantial prejudice or provide whatever other relief justice requires. In ruling on a motion by the defendant for severance, the court may consider any evidence, statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

The statutory references in Rule 24.06 in effect at the time of trial were to statutes that had been repealed as of January 1, 1979. If we are to ignore the substance of the rape and sodomy statutes that were repealed and § 545.885 RSMo Supp.1981, there would be no exception to the requirement that jointly charged defendants be tried separately when a motion for severance is filed. Rule 24.06(a). It would also mean that Rule 24.06(b) would have no meaning. In construing a rule of the Supreme Court, we use the rules that guide courts in the construction of statutes. *State v. Windmiller,* 579 S.W.2d 730 (Mo. App.1979).

It is generally held that the rule making body intended its act to have applicability and effect. In determining the intent of the rule making body, it is appropriate to review the history of the rule, the surrounding circumstances and the ends to be accomplished. *Protection Mutual Insurance Co. v. Kansas City,* 504 S.W.2d 127[8, 3] (Mo.1974).

In 1963, the General Assembly enacted § 545.885 which provided that defendants jointly charged under §§ 559.260, 559.270 or 563.230 RSMo 1959 (Rape and Sodomy) could be tried jointly within the discretion of the court. The Supreme Court promulgated Rule 25.07 to parallel the statute. This rule became effective June 1, 1964. It has been said that the purpose of the statute and of the rule was to avoid the necessity of the prosecuting witnesses making multiple appearances in such cases. *State v. Lee,* 404 S.W.2d 740, 745 (Mo.1966). After the enactment of the present criminal code, § 545.885 was amended. The statutory references were deleted and replaced by

---

**2.** The effective date was August 13, 1980.

specific language that stated that defendants jointly charged with "rape or forcible rape, sodomy or forcible sodomy, or an attempt to commit any of the aforesaid," could be tried jointly. The Supreme Court repealed Rule 25.07 and enacted Rule 24.06 which was printed as set out above. As shown before, the rule made reference to statutes that had been repealed.

Considering the history of Rule 24.06 and § 545.885 RSMo, their purpose and the surrounding circumstance and giving them applicability and effect, there can be no doubt as to the meaning of Rule 24.06. The full meaning can be found in § 545.885 RSMo Supp.1981. It is clear that the trial court, in its discretion, may try defendants charged with rape, sodomy or attempt to commit these crimes in the one trial.

■ Defendant Schleicher also complains that the court should have granted a severance because "there existed evidence which was admitted against co-defendant Walker and not against appellant."

There was evidence that Walker struck the prosecutrix in the face and struck her head against the headboard when she refused to engage in fellatio. It also appears that after doing so, Walker told Schleicher that prosecutrix would cooperate thereafter. Schleicher then took advantage of the assault. The evidence was admissible as to both defendants with respect to the element of consent.

Under the same point, defendant Schleicher argues matters not raised in the point relied on. These matters will not be discussed. *State v. Hodges,* 575 S.W.2d 769, 773 (Mo.App.1978). The trial court did not abuse its discretion in refusing to grant a severance.

■ Defendants contend that the trial court erred in failing to give MAI–CR 2.36 prior to the testimony of a psychiatrist who had examined the prosecutrix and testified as to statements made by prosecutrix concerning the facts with respect to the incident giving rise to this case.

The psychiatrist, after an examination of prosecutrix, made a diagnosis of rape trauma syndrome. In his examination the doctor was required to obtain a history of prosecutrix's condition and he testified at the trial as to statements made to him by prosecutrix.

The trial court did not give an oral instruction before the psychiatrist testified. It did give a modified MAI–CR 2.36[3] along with the other instructions after the close of the evidence.

Defendants make no complaint as to the form or substance of the instruction as given but contend that the failure to orally instruct the jury before the doctor testified was violative of § 552.030(6) RSMo 1978[4] and constituted prejudicial error. Among other provisions, § 552.030 RSMo 1978 provides for psychiatric examination of persons who plead mental disease or defect excluding responsibility for alleged criminal acts. Section 552.030(6) reads as follows:

> "No statement made by the accused in the course of any such examination and no information received by any physician or other person in the course thereof, whether such examination was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of whether he committed the act charged against him in any criminal proceeding then or thereafter pending in any court, state or federal.

**3.** The instruction given to the jury was as follows:

"You will recall that a doctor testified to certain statements that he said were made to him and certain information that he said had been received by him during or in connection with his inquiry into the mental condition of the witness.

In that connection the court instructs you that evidence of such statements and information, which the doctor said were received by him, was admitted solely on the issue of the mental condition of the witness. Under no circumstances should you consider the doctor's testimony about the statements or information, which he says he received, as evidence that the defendants did or did not commit the acts charged."

**4.** This statute has been revised since the time of trial. See § 552.030 RSMo Supp.1981.

The statement or information shall be admissible in evidence for or against him only on the issue of his mental condition, whether or not it would otherwise be deemed to be a privileged communication. If the statement or information is admitted for or against the accused on the issue of his mental condition, the court shall both orally at the time of its admission and later by instruction inform the jury that it must not consider such statement or information as any evidence of whether the accused committed the act charged against him."

In conformity with the portion of the statute, MAI–CR 2.36 reads:

"2.36  *Mental Responsibility: Limitation of Expert Testimony*

You will recall that (a doctor) (certain doctors) testified to certain statements that (he) (they) said were made to (him) (them) and certain information that (he) (they) said had been received by (him) (them) during or in connection with (his) (their) inquiry into the mental condition of the defendant.

In that connection the court instructs you that evidence of such statements and information, which the doctor(s) said were received by (him) (them), was admitted solely on the issue of the mental condition of the defendant at the time of the offense charged against him. Under no circumstances should you consider the (doctor's) (doctors') testimony about the statements or the information, which (he says he received) (they say they received), as evidence that the defendant did or did not commit the acts charged against the defendant."

It is obvious from a reading of § 552.-030(6) RSMo 1978 and MAI–CR 2.36, confirmed by the opinion in *State v. Strubberg,* 616 S.W.2d 809 (Mo.1981), that they are applicable only as to the testimony of a doctor who has examined the defendant under § 552.030(4) RSMo 1978, or under § 552.020 RSMo 1978, which is treated by the trial court as an examination under § 552.030 RSMo 1978. The trial court did not err in failing to follow the procedure set out in § 552.030(6).

Defendants finally contend that the trial court erred in overruling defendants' objections to comments made by the trial court during voir dire to the effect that a drug addict was entitled to all the rights, privileges and protection of the law as any other citizen. Defendants urge that this was a comment on the evidence and an instruction on the "believability and credibility" of the prosecutrix's testimony, a crucial issue in the case.

As stated earlier in this opinion, it was conceded by all parties that the prosecutrix was a narcotics addict. During voir dire by the State, counsel made repeated references to the fact that the victim [prosecutrix] was a drug addict, that drug addiction was a disease and made inquiry about the effect of her drug addiction upon the jurors' deliberations. Defendant objected to questions to the effect that scientific evidence shows addiction is a disease. The court sustained the objections and limited the prosecutor to inquiry as to whether addiction would affect their verdict in any way. Thereafter, the following proceedings occurred:

"MR. SULLIVAN [Assistant Circuit Attorney]: Do you accept the fact that it's [addiction] a disease?

THE COURT: Here we go again.

MR. WHITNEY [Counsel for Defendant Schleicher]: Your Honor, I don't want—

THE COURT: Let's get off that topic. A person who's addicted or who is an alcoholic does have all the rights and privileges of any other citizen and they have all the protection of the law of any other citizen. Is that clear?

VENIREMAN LOMBARDI: Yes.

THE COURT: All right. And because they become a victim or supposedly become a victim of a crime, does not make it all right. They have all the protection of the law as any other citizen."

▪ A trial court is empowered, in its discretion, to control voir dire examination, and may on its own, examine members of the venire. Its conduct and control of the

voir dire will not be disturbed except for an abuse of that discretion. The court must, however, maintain a neutral position. It should avoid (1) any expression or feeling of partiality; (2) any remark which could be construed as indicating its belief as to the guilt of defendant; and/or (3) any demonstration of hostility toward defendant. *State v. Hurd,* 550 S.W.2d 804 (Mo.App. 1977).

An analysis of the above incident indicates that the remarks were directed to a juror as a voir dire question within the prerogative of the court. *State v. Hurd, supra.* It was not a comment upon the evidence; no evidence had been admitted.

The comments of the court indicated no feeling of partiality nor of hostility toward defendants. In fact, it appears that counsel for Schleicher started to make an objection and the court, anticipating the objection, responded with an admonition directed to counsel for the State. The court did not indicate by the remarks that it believed the defendants were guilty. The remarks contained no direct or indirect reference to prosecutrix's credibility and thus could not be said to be an instruction as to her credibility. Defendants have failed to establish that they were prejudiced by the remarks of the trial court in this case. *State v. Hurd, supra.*

The trial court committed no reversible error. The judgment is affirmed.

STEPHAN and CRANDALL, JJ., concur.