STATE of Missouri, Plaintiff-Respondent,

v.

Calvin TATE, Defendant-Appellant.

No. 45369.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 27, 1983.

Henry Robertson, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Defendant appeals from judgments convicting him of three counts of rape, one count of sodomy, and one count of first degree assault. §§ 566.030, 566.060, 565.050 RSMo.1978. Appellant was sentenced as a persistent offender pursuant to § 558.016 RSMo.1978 to a total of thirty-five years in the custody of the Missouri Department of Corrections.[1] Appellant was tried jointly with codefendant Ford. The judgment is reversed and remanded because of an error in giving a verdict director instruction relating to a codefendant and in denying appellant's motion to sever.

To support his plea for reversal appellant raises five points of alleged trial error. He asserts the trial court erred in: (1) giving a verdict director instruction which in effect required the jury to find appellant guilty before they could find a co-defendant guilty; (2) admitting various pieces of evidence which resulted from an allegedly illegal arrest; (3) denying appellant's motion to sever the trials of appellant and the co-defendant; (4) submitting a second-degree assault instruction. Fifth, appellant maintains his statutory right to a speedy trial was violated, § 545.780 RSMo.1978.

Appellant has not attacked the sufficiency of the evidence. Therefore a brief summary of the facts presented to the jury will suffice. Co-defendant Arthur Ford stole an automobile in St. Louis at 2:30 a.m. on September 28, 1980 and at 3:30 a.m. volunteered to give the woman who was the victim of the crimes charged in this action a ride home from an East St. Louis, Illinois tavern in the stolen automobile. Instead of taking the victim to her home in East St. Louis, however, Ford drove the car to St. Louis where he and two other men, including appellant, who were also riding in the car, raped and sodomized her inside the car.

When the trio feared detection from an approaching police car, they set the car on fire with the victim still inside and then fled. Fortunately, she managed to get out of the automobile and escape further injury.

Additional facts will be related as necessary to the analysis of appellant's points relied on.

The first point raised by appellant is that the verdict director submitted against co-defendant Ford, Instruction 15, was erroneous and prejudicial because it required the jury to find appellant guilty in order to find Ford guilty.[2] The instruction requires the

1. Appellant was sentenced to three concurrent terms of twenty-five years each on the rape counts and, consecutively, to two consecutive terms of ten years on the sodomy and assault counts.

2. The contested instruction read as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 28, 1980 between the hours of 5:00 and 6:00 A.M., in the City of St. Louis, State of Missouri, the defendant Arthur Ford was not married to D——— W———, (sic) and

Second, that at that time and place the defendant Arthur Ford had sexual intercourse D——— W———, and

Third, that defendant Arthur Ford did so without her consent by the use of forcible compulsion,

then you are instructed that the offense of rape was committed, and if you further find and believe from the evidence beyond a reasonable doubt:

jury, in order to convict Ford, to find that Ford acted with appellant and another for the purpose of committing the rape perpetrated by Ford. The point is well taken and the cause must be reversed and remanded as a result.

The case was submitted to the jury on December 17, 1981. At that time, cases involving accessory liability could be governed by one of six forms of MAI–CR2d 2.12. Order of Supreme Court, April 14, 1980, 37 J.Mo.Bar 270 (1981); rescinded April 30, 1982, 38 J.Mo.Bar 305.

The first three elements of the verdict director conform to MAI–CR2d 20.02.1 and suffice to submit the substantive offense of rape to the jury. § 566.030 RSMo.1978. The fourth element was required by the third form of then applicable MAI–CR2d 2.12 whenever there was evidence that there were two or more active participants and no evidence that the accused was an inactive participant.

The issue is whether there was evidence that two or more persons actively participated in the rape which is charged in the instruction. Although the evidence showed the victim was raped by three men among whom were appellant and Ford, there was no evidence that two or more persons committed the specific act of rape charged in the Ford verdict director.

■ One is an active participant who commits an essential element of the crime charged. MAI–CR2d 2.12, Notes on Use 4a, 37 J.Mo.Bar at 273. Thus, one must have sexual intercourse with the victim or supply the element of force in order to be an active participant in a rape. See, e.g., State v. Pierson, 610 S.W.2d 86 (Mo.App.1980) (one active participant ordered the victim to have sexual intercourse with another active participant).

■ The verdict director hypothesized Ford as the person who committed all the

acts necessary to constitute the offense of rape. Therefore, all other hypothesized perpetrators could at most have been inactive participants who assisted Ford in his rape of the victim. Because Ford was the sole active participant, it was error to submit the verdict director with the element of accessory liability. Indeed, it was totally unnecessary because the first three elements alone constituted the offense of rape committed by Ford.

Perusal of then applicable MAI–CR2d 2.12 reveals that the first form should have been followed:

1.

WHERE THE DEFENDANT'S CONDUCT AS AN ACTIVE PARTICIPANT WAS SUFFICIENT IN ITSELF TO MAKE HIM CRIMINALLY RESPONSIBLE, AND THERE IS NO EVIDENCE THAT HE WAS AN INACTIVE PARTICIPANT.

[Use the applicable MAI–CR2d forms even if there was evidence that defendant was aided by another or others, so long as defendant's conduct, considered alone, was sufficient to make him criminally responsible for the offense. There need be no reference to the conduct of any person who aided defendant].

37 J.Mo.Bar at 270–271. There was error in the Ford instruction. It is for this court to decide whether appellant was prejudiced by the error. Rule 28.02(e).

Both parties to this appeal agree that the effect of the contested verdict director was to force the jury to convict both defendants or neither. The jury was faced with a possible dilemma; it could not convict Ford and yet acquit appellant.

The possibility exists, however remote, that the jury believed the evidence incriminating Ford and disbelieved the evidence implicating appellant, but decided to con-

---

Fourth, that in the commission of such offense the defendant Arthur Ford acted with Calvin Tate and another person with the purpose of committing that offense,
then you will find the defendant Arthur Ford guilty under Count I of rape.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant Arthur Ford not guilty of that offense.

vict appellant in order to convict Ford. They could not find Ford guilty on Count I without finding that Ford acted with appellant in committing the offense. This court cannot allow a jury to convict two defendants on evidence which incriminates only one of them. *State v. Hesselmeyer,* 343 Mo. 797, 123 S.W.2d 90, 99[21] (Mo.1938). Although there was evidence which incriminated appellant, the Ford verdict director on Count I, Instruction 15, encouraged the jury to convict appellant based on evidence which incriminated only Ford. Appellant is presumed innocent until proved guilty, not until Ford is proved guilty.

The mere possibility that the jury convicted appellant in order to find Ford guilty is sufficiently prejudicial to appellant to cause this court to reverse and remand his conviction. Moreover, two facts tend to indicate the realization of that possibility, thus giving further substance to a finding of prejudice.

First, the jury specifically asked the trial court how it could find one person guilty if another individual was not present. During jury deliberations the following question was submitted to the trial judge:

> Last paragraph—Instruction 15—The words "Each and all"—How can we find one individual guilty if decision is made that one individual was not present?

> We need to clarify this in order to continue. The intent of this wording (signed) Vonder Haar (foreman).

The trial judge told them to be bound by the evidence and instructions.

Second, the record discloses that the evidence against Ford was stronger than the evidence of appellant's guilt because the victim had a much greater opportunity to observe Ford than appellant.

Not only was the erroneous Instruction No. 15 prejudicial to appellant in the jury's consideration of the rape charge of Count I, but Instruction No. 15 tainted all other counts against appellant as well. Appellant's defense was that he was not present during the commission of any of the crimes charged. Instruction No. 15 required the jury to find that Tate assisted Ford in order to convict Ford. A finding of assistance rendered by Tate necessarily implies Tate's presence at the scene of the crime.

Once the jury had been led to find Tate's presence in order to convict Ford of the rape committed by Ford, the jury would be compelled by logic to find Tate was present during the commission of all other offenses. At no time was it suggested, by evidence or argument, that Tate was present during the commission of one offense, but not the rest.

The erroneous instruction thus prejudiced Tate's defense of absence from the scene of the crime, and therefore renders all the guilty verdicts against Tate suspect.

The state bears the burden of demonstrating that the instructional error was not prejudicial because it submitted the contested verdict director. See *State v. Phillips,* 583 S.W.2d 526, 530[4] (Mo. banc 1979). That burden was not met. Other cases which arguably involve accessory liability may permit the possibility that the jury convicted one defendant because of evidence incriminating another defendant. However, where, as here, the accessory liability instruction was erroneous, the possibility that the jury found one defendant guilty in order to reach a guilty verdict as to another renders the erroneous instruction prejudicial.

Respondent argues that the state assumed a greater burden than was necessary because the jury had to convict both Ford and appellant in order to convict either defendant; therefore, they say the error was not prejudicial. This court disagrees with respondent's conclusion.

When the state assumes a greater burden than was necessary to convict the accused, any error regarding the assumption of such a burden is not prejudicial to the accused. *State v. Roland,* 619 S.W.2d 771, 776–777 (Mo.App.1981). Thus, because the state assumed the burden of proving four elements rather than just the three necessary elements of rape, the state assumed a greater burden than necessary in the prosecution of Ford, the co-defendant.

Although the state may have carried a greater burden than necessary to convict Ford, the state bore no greater burden for appellant. It bore the same burden for appellant under the applicable instructions, regardless of which elements were submitted in the Ford verdict director.

Although the cause is being remanded because of the erroneous instruction, other points which may arise at a retrial will be addressed.

Appellant's second contention is that he was the victim of an illegal arrest and that therefore, various items of evidence should have been suppressed. After his arrest appellant asked, "Even if I didn't do anything, just by me being there makes me an accessory, right?" Shortly after the arrest, the victim identified appellant as one of the rapists. Appellant also later made a written exculpatory statement. His clothes were seized subsequent to the arrest. All the foregoing was introduced at trial. Appellant's arrest was based on probable cause and the point is denied.

Immediately after the assailants had set fire to the automobile and fled, Officers Gooch and Kammerer arrived at the scene. Based on a conversation with the victim, Officer Gooch put out a call over the police radio that three negro males were wanted for rape.

Within minutes after the call by Officer Gooch, Officer Carr arrested appellant, a negro male, as he was standing beside a flatbed trailer about six blocks from the burning automobile. Appellant was bending over putting on some shoes. The area where appellant was arrested and the rapes occurred was desolate, and devoid of people when appellant was arrested at around 5:30 a.m. on Sunday, September 28, 1980. Appellant was alone and not in possession of a sawed-off shotgun.

Officer Carr testified at the hearing on appellant's motion to suppress that he heard the following description of the rapists over his police radio.

... [I]t was three negro males wanted for rape and it was ... first negro male was six foot-two, approximately two hundred pounds, between thirty five and forty of age. The second subject was five foot seven, between twenty, thirty years of age, large afro, dark complected. And, I believe, the third subject was a negro male, twenty-five to thirty, braided hair.

Appellant's motion to suppress was overruled.

Officer Carr recanted his testimony at trial, saying that the description which was broadcast was only for three negro males armed with a sawed-off shotgun. The more detailed description was given *after* appellant had been arrested and advised of his constitutional rights.

An arrest without a warrant must be based upon probable cause. *State v. Olds*, 603 S.W.2d 501, 505[1, 2] (Mo. banc 1980). In order to have probable cause to arrest, the arresting officer "... must have known facts sufficient for a prudent person to believe [the] defendant had committed or was committing an offense." *State v. Berry*, 609 S.W.2d 948, 952[6–11] (Mo. banc 1980).

The issue here is thus whether Officer Carr had knowledge of facts sufficient for a prudent person to believe that appellant had committed the offense of rape. The existence or lack of probable cause for an arrest must necessarily depend on the facts of each particular case. *State v. Seymour*, 438 S.W.2d 161, 163[3] (Mo.1969).

Here, appellant, a negro, was arrested based upon a rather vague description that three negro males were wanted in connection with a rape. Without more, this court would be inclined to rule that no probable cause existed.

It must be emphasized, however, that appellant was found in an industrial, riverfront area in which no pedestrians would ordinarily be found in the early Sunday morning hours. As Officer Gooch described the area, "In that location there and that time of morning you have about as much activity as you would on the moon." Thus, when Officer Carr discovered appellant only six blocks from the scene of the crime, he

had reason to believe that appellant had committed the crime.

Appellant cites *Gatlin v. United States,* 326 F.2d 666 (D.C.Cir.1966) to support his contention that his arrest was without probable cause. The case is distinguishable. In *Gatlin,* the suspect was arrested one and one-half miles from the scene of the crime and one hour and forty minutes after the crime had occurred. Here, appellant's arrest occurred much closer to the time and place of the crime. Furthermore, this court is not bound by the pronouncements of the federal circuit courts of appeals on constitutional issues.

■ Appellant's close geographic and temporal proximity to the crime, the desolate nature of the area, and the fact that appellant was of the gender and race called for by the general description of the assailants leads this court to find that probable cause existed to arrest appellant.

Next, appellant asserts that the trial court's partial denial of his motion to sever the trials of himself and Ford was error. This court agrees.

The trial court severed the trials of Tate and Ford on one count of robbery involving the theft of the automobile in which the victim was raped and severed the robbery count trial from the trial on the rape, sodomy, and assault counts. Tate and Ford were tried jointly on the rape, sodomy and assault charges in the trial from which this appeal arises.

■ In order to justify a severance of defendants charged with rape or sodomy, the defendant moving for the severance must make a particularized showing of substantial prejudice from the joinder of defendants. § 545.885.2 RSMo.1978 (1982 Cum.Supp.). Rule 24.06(b), formerly rule 25.07(b), parallels § 545.885.2. See *State v. Walker,* 639 S.W.2d 854, 860 (Mo.App.1982). Under Rule 24.06(b), however, whether to grant a severance of defendants jointly charged with rape or sodomy is a decision left to the sound discretion of the trial court, *unless* the moving defendant shows that there is evidence admissible against other defendants which is inadmissible against him. There is no mention of substantial prejudice in Rule 24.06(b).

Appellant cites the following evidence as being admissible against Ford but inadmissible against Tate:

(1) testimony by the victim of the auto theft which identifies only Ford;

(2) oral and written statements by Ford; and

(3) evidence that a key which belonged to the auto theft victim was found on Ford's person.

Neither the evidence of the key nor Ford's statement was admissible against Tate. The key had no relation to the crimes with which Tate was charged.

In his brief, Tate complains about the following statement made by Ford to Tate while the pair was in custody at the police station: "What difference does it make where we are? She said we did it and that's that."

■ The issue is whether a statement made by a co-conspirator after the conspirators are under arrest and in police custody is admissible against another co-conspirator. Statements made by a co-conspirator after termination of the conspiracy are inadmissible against other co-conspirators. See *State v. Chernick,* 278 S.W.2d 741, 747–748 (Mo.1955). Here the arrest terminated the conspiracy. The criminal purpose had been accomplished, the rapists had fled, and they had been arrested.

Respondent contends, however, that the present case falls within the scope of the rule that the arrest of co-conspirators and accomplices and the circumstances surrounding such arrests may be proven. See *State v. Rocha,* 526 S.W.2d 834, 838[13, 14] (Mo.App.1975). In *Rocha,* the court permitted testimony that two accomplices of the defendant had been arrested. The present case is distinguishable because here the evidence is not related to Ford's arrest or the circumstances surrounding it, but rather the evidence is a statement made by Ford after the arrest, inadmissible against Tate as the statement of a co-conspirator.

The statement was also not admissible as a tacit admission of Tate because both Tate and Ford were together in police custody when Ford made the statement. See *State v. Tomlin*, 542 S.W.2d 794 (Mo.App.1976).

■ The evidence of Ford's statement was inadmissible against Tate. *State v. Chernick, supra; State v. Tomlin, supra.* The trials of Ford and Tate should therefore have been severed. Rule 24.06(b). On remand, appellate Tate will be tried separately from Ford.

■ The conflict between Rule 24.06(b) and § 545.885.2 RSMo 1978 (1982 Cum. Supp.) should be mentioned. Rule 24.06(b) unequivocally removes from the trial court's discretion the authority to order a joint trial in rape and sodomy cases if there is evidence admissible against one or more defendants and not admissible against one or more other defendants.

If there is such evidence the rule requires that "the defendant or defendants against whom the evidence is admissible *shall* be tried separately." (Emphasis added). The rule requires no showing of substantial prejudice as does § 545.885.2 RSMo.1978 (1982 Cum.Supp.).

The words of the rule must be given their plain meaning and cannot be said to be modified or amended by the statute which became law after the rule was adopted.

■ Rules of practice and procedure may only be "annulled or amended in whole or in part by a law limited to the purpose." Mo. Const., art. V, § 5. A statute must specifically refer to a rule in order to amend or annul it. See *State ex rel. Pressner v. Scott*, 387 S.W.2d 539, 543[4] (Mo. banc 1965); *Miller v. Russell*, 593 S.W.2d 598, 604[8] (Mo.App.1979). There was no specific reference to Rule 24.06(b) in § 545.-885 RSMo.1978 (1982 Cum.Supp.).

It would be eminently logical, and only common sense, to require a showing of substantial prejudice before taking away the discretion of the trial court to order joint or separate trials. The purpose of the rule and statute was to avoid the necessity of the prosecuting witness' making multiple appearances in sex cases. *State v. Walker, supra* at 860. That purpose is not well served as the law now stands.

The rule, interpreted literally, assures that joint trials of rape and sodomy defendants will be held in only rare cases. There will nearly always be some evidence admissible against one defendant and not against the other, as there is in the case here reviewed. The rule should be changed to allow the trial court to decide on severance unless substantial prejudice is shown by the defendant.

Appellant's complaint about the submission of a second-degree assault instruction need not be discussed. The evidence on retrial may be different and will determine what instructions should be given.

Appellant's final contention is that his right to a speedy trial was violated. § 545.780 RSMo.1978. The case first went to trial 174 days after appellant's arraignment. Upon motion by the prosecution, the trial judge declared a mistrial because of improper conduct by the jurors. The second trial, from which appellant now appeals, commenced within 60 days after the mistrial was granted.

Section 545.780.4 declares that if the first trial results in a mistrial, the new trial shall commence within sixty days from the order declaring a mistrial. Appellant contends that § 545.780.4 should not apply because the declaration of the mistrial was at the request of the state. This contention has no merit.

■ The statute does not distinguish between mistrials granted on the motion of the state and those granted at the behest of the defendant or on the trial judge's own motion. The plain language of § 545.780.4 dictates a denial of this point.

The judgment is reversed and the cause remanded.

DOWD, Chief Judge, and STEWART, J., concur.