**STATE of Missouri, Respondent,**

v.

**Isaac Harold SCOTT, Appellant.**

**No. 47299.**

Missouri Court of Appeals,
Eastern District,
Division Six.

Nov. 5, 1985.

Henry Robertson, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Presiding Judge.

Appeal from jury convictions for burglary in the first degree, attempted rape, robbery in the first degree, and armed criminal action. Defendant (Scott) was sentenced to ten years' imprisonment for burglary in the first degree, a consecutive term of twenty years' imprisonment for attempted rape, a consecutive term of thirty years' imprisonment for armed robbery, and a term of fifty years' imprisonment for armed criminal action, to be served consecutively to the sentences for burglary and attempted rape, and concurrent with the sentence for armed robbery for a total of eighty years' imprisonment. Error is proffered in the court's refusal to sever the trial of his co-defendants, and in the verdict-directing instructions given the jury to govern deliberations on the charge against Scott's co-defendants. We affirm.

The victims of this crime were a retired sportswriter (husband) and his 74-year-old wife, who lived at 6054 McPherson in the City of St. Louis. Dwayne and Darnell Duckett, and Scott, the alleged perpetrators of the crimes, discussed the burglary at the home of a friend on the two nights before June 16, 1982, when the burglary occurred. At about 2:00 o'clock in the morning on that day, husband was awakened by three men in his bedroom. One man beat him, and another held a butcher knife to his throat, telling him "If

you move, I'll kill you." He was bound at his hands and feet. The men then ransacked the house and then proceeded to wife's bedroom, which adjoined husband's bedroom and was connected to that room by a door.

Husband could hear his wife screaming and moaning, and through the open door could see one of the men standing at the foot of her bed, with his pants opened, fondling himself in an attempt to achieve an erection. Later medical examination revealed wife had a fractured skull, various bruises and abrasions, and a fractured leg. According to the medical expert, the leg fracture was entirely consistent with an attempt to pry her legs apart. Jewelry was also taken from wife's fingers. The men left the house about 4:00 a.m.

At about the time the men left, two police officers, on a routine patrol, observed a car with its tail lights on in the alley behind the victim's home. It appeared three people were placing items into the open trunk of the car. As the police approached, the people entered the car and drove away. The officers gave chase, but were unable to catch them. Three characters of the automobile's license number were 638.

The car was pulled to the curb in front of 6150 McPherson. Two men exited the car and ran to the alley behind the house. These men were identified as Scott and Darnell Duckett by a neighbor who knew them from around the neighborhood. One officer pursued them into the alley on foot but did not catch them.

In the meantime, husband freed himself, met some police officers and advised them of the crime. Other officers arrived at the scene; one watched the car, which belonged to Scott, while two went to the residence at 6150 McPherson. The only men inside were Scott and the Ducketts. While those officers were inside, Scott came out and asked the officer watching the automobile what he was doing with the car. The officer stated the car had been used in the commission of a crime, to which Scott replied it must have been stolen and

returned. He further stated he lost his keys to the car.

Scott and the Ducketts were arrested, and Scott's automobile, license number EB–638, was towed to the police garage. Numerous items stolen from the victims were found in the car, along with a pair of gloves and a homemade mask. The house at 6150 McPherson was searched under a written consent. Wallets belonging to victims were found under a mattress in the second floor bedroom. Two watches, one a Bulova, were recovered. Husband had reported the theft of the Bulova watch. When the watches were shown to Darnell Duckett, he first claimed both belonged to him. But upon being informed the Bulova had been reported stolen, he then disclaimed ownership, and said he did not know anything about it. Then, the watches and wallets were shown to Dwayne Duckett, and he was told they were found under the bed in which he slept. Dwayne stated he slept on the other bed in the same room. Both Dwayne and Scott denied any knowledge of the stolen items.

After their arrest, Scott and Darnell Duckett were placed in a common cell. Later on the day they were arrested, they advised police they wanted to talk. Darnell told the police he acquired the Bulova watch from one Richard Reynolds, as payment for a bike Reynolds purchased from Darnell. Scott stated while he originally told police his car keys had been stolen, in actuality he had given the keys to Reynolds to pick up his brother from work. Later, Dwayne informed police of the location of some items stolen from victims. These items were then recovered.

■ Scott first attacks the trial court's refusal to sever the cases of the three defendants for trial. He claims he was entitled to a automatic severance under Rule 24.06(a). However, this case falls under Rule 24.06(b), which states:

(b) When two or more defendants are jointly charged under the provisions of one or more of Sections 566.030 or 566.-

060, RSMo., they shall be tried jointly or separately as the court in its discretion may order, unless there is evidence admissible against one or more defendants and not admissible against one or more other defendants, in which event, upon motion made prior to the commencement of trial by a defendant against whom the evidence is in admissible, the defendant or defendants against whom the evidence is inadmissible shall be tried separately.

As all these defendants were charged with attempted rape, they were charged "under the provisions ... of § 566.030" and a joint trial is authorized. *State v. Walker*, 639 S.W.2d 854, 861 (Mo.App.1982).

However, Scott asserts severance was mandatory even under Rule 24.06(b), in that there was evidence admissible against a co-defendant and not against him which, under the rule, required severance. *State v. Tate*, 658 S.W.2d 940, 941, 946–47 (Mo.App.1983). The evidence Scott cites to as inadmissible against him, but admissible against one or more of his co-defendants, consist of:

(1) Co-defendant Darnell Duckett's statements concerning the Bulova watch, where he first claimed it as his, and then changed his story, denying ownership, and later still changing the story again, claiming it was payment for a bike he had sold to one Reynolds and that he hid the watch when police came.

(2) Co-defendant Dwayne Duckett's statements denying knowledge of the wallets or watches, and admitting he slept in the bed next to the bed were the wallets were found, and

(3) Co-defendant Dwayne Duckett's trial testimony, wherein he claimed Scott ordered him to tell the police he (Dwayne) had been asleep, and not to tell about the stolen property; Scott told Dwayne about the unrecovered stolen property; and when Scott refused to tell Dwayne how the wallets got under the mattress in Dwayne's bedroom, Dwayne wrote the prosecutor and threatened to become a state's witness.

Arguing these statements were hearsay and inadmissible against him, Scott argues severance was required under *Tate, supra.* The state argues many of the statements were not hearsay, those that were hearsay could nonetheless be used against Scott, and, in any event, any error with regard to severance was not prejudicial.

■ Assuming the statements were hearsay, they would still be admissible if they were made by a co-conspirator in furtherance of the conspiracy. *State v. Yingst*, 651 S.W.2d 641, 645 (Mo.App.1983). The record clearly shows a conspiracy between the three defendants had been established.

■ Scott, citing *Tate, supra* at 946–47, argues the arrest of the three men ended the conspiracy, and any statements made subsequent to the arrest were not admissible against him. However, neither the completion of the crime nor arrest of the perpetrators necessarily will end a conspiracy. *Yingst, supra; State v. Smith*, 631 S.W.2d 353, 360 (Mo.App.1982). As stated in *Yingst,*

> When a conspiracy has been independently shown to exist, statements of a cocon-spirator, made in the furtherance of the object of an unlawful combination, are admissible against another coconspirator not present when such statements were made.... If a conspiracy continues for any purpose, such as concealing a crime or taking measures to prevent or defeat prosecution, the admissions of one coconspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiracy.

*Yingst, supra.*

It is evident all of the challenged statements were uttered in an attempt to conceal participation in the perpetration of the crime, and therefore to defeat prosecution. The statements are admissible under the rule in *Yingst.*

Finally, defendant Scott argues that the trial court committed plain error by giving the state's verdict directing instructions on the co-defendants, Dwayne and Darnell

Duckett. This point is raised in two parts. First, defendant claims that the following language incorporated in each verdict directing instruction of the co-defendants prejudically deviated from MAI–CR 2d 2.12 and Notes on Use of that instruction. Second, if it did not deviate from the approved instruction then the use of the instruction was a misstatement of the law because it required the jury to find defendant Scott guilty as a condition of finding either or both of the co-defendants guilty. To illustrate the point defendant Scott refers to Instruction No. 6 which submitted the burglary charge against Darnell Duckett in the following form:

> Fourth, that with the purpose of promoting or furthering the commission of burglary in the first degree, the defendant Darnell Duckett acted together with Dwayne Duckett and Isaac Harold Scott in committing that offense,
>
> .    .    .    .    .
>
> Then you will find the defendant Darnell Duckett guilty under Count I of burglary in the first degree.

Defendant Scott acknowledges that where co-defendants are separately tried, the format used is unobjectionable. However, Note on Use 8 cautions that this format of MAI–CR 2d 2.12 is not always applicable:

> (a) This format of MAI–CR 2d 2.12 covers only those situations where the defendant is to be held responsible for the conduct of another and that other person is also guilty of the offense. This format does NOT apply to situations where the defendant is being held responsible for the conduct of another person and that other person is not guilty of the offense. For example, it does not cover the situation where the other person is not guilty because the other person does not himself have the required culpable mental state for the crime, as can occur when the defendant commits a crime by the use of an 'innocent agent.' See Note on Use 2. This format may also *not* apply where the defendant is charged with a higher degree of an offense than the other person involved is guilty of or has committed. In such cases, it may be necessary to modify MAI–CR 2d 2.12.

■ Defendant Scott failed to specifically object to the instructions at trial or in his motion for new trial as required by Rule 28.03. The error was not preserved for review. *State v. Lewis*, 637 S.W.2d 93 (Mo.App.1982). He asked for review of this point under plain error. Rule 29.12(b). On this basis Scott must go beyond demonstrable prejudice and show the error so affects his substantial rights as to result in manifest injustice. *State v. Davis*, 675 S.W.2d 652, 656 (Mo.App.1984).

■ It would have been possible to avoid this issue if the MAI–CR 2d 2.12 paragraph in the co-defendant's verdict instructions had been modified by adding the words in brackets so as to read,

> Fourth, that with the purpose of promoting or furthering the commission of burglary in the first degree, the defendant Darnell Duckett, acting [alone or] together with Dwayne Duckett [or] Isaac Scott [or both of them] in committing that offense, ...

However, as a matter of plain error it does not follow that the failure to modify the instruction, as suggested or in like manner, resulted in a denial of substantial rights resulting in a manifest injustice. Instruction No. 4, MAI–CR 2d 2.20, properly instructed the jury as to the burden of proof as to each defendant on each count. Instruction No. 5, MAI–CR2d 2.73, instructed the jury to consider each defendant and each count against that defendant separately. Instruction No. 5 also told the jury that any defendant or defendants could be found guilty or not guilty and that they were to render separate verdicts as to each defendant on each count submitted against him. Further, the court submitted defendant Scott's alibi defense in Instruction No. 33, MAI–CR 2d 3.20. In Instruction No. 33 the jury was told that one of the issues in the case was whether defendant Isaac Harold Scott was present at the time and place the offenses are alleged to have been committed; that the state had the burden

of proving beyond a reasonable doubt that he was present; and, if the jury had reasonable doubt that he was present then it must find defendant Isaac Harold Scott not guilty.

The alibi instruction was simple and afforded defendant Scott the opportunity to have his separate defense determined separate and apart from the complex verdict directing instructions for the co-defendants. On the issue presented it may conflict with the verdict directing instructions on the co-defendants. However, the jury must have considered and rejected defendant Scott's alibi defense and found that the state met its burden of proof that defendant Scott was present when the charged crimes were committed. Instructions 4, 5 and 33 preserved defendant's right to a separate consideration of his alibi defense and mitigate against defendant Scott's complaint that the verdict directing instructions for the co-defendants charges, standing alone, required that he be found guilty as a condition of finding the co-defendants guilty of each charge. The jury had the opportunity under Instruction No. 33 to accept as true defendant's alibi and find the defendant not guilty of all charges. When all the instructions are considered together we do not find that the trial court so misdirected the jury upon the law as to produce or cause a manifest injustice or miscarriage of justice. *State v. Ealey*, 624 S.W.2d 465, 467 (Mo.App.1981). Even when we consider preserved instructional error to determine prejudice we view all the instructions read together. *State v. Roden*, 674 S.W.2d 50, 56 (Mo.App.1984). This is a more appropriate procedure in considering a claim of plain error.

The prosecutor did not argue to the jury it had to find Scott guilty before it could find the other co-defendants guilty. The evidence was very strong the three defendants were involved in the charged criminal activities against the victims. Instructional error rarely constitutes plain error. *State v. Evans*, 660 S.W.2d 433, 434–435 (Mo. App.1983). Although there may have been some conflict in the instructions we reject defendant's argument that the accessory liability portion of the verdict directing instructions submitting the charges against the co-defendants denied defendant his substantial rights to a fair trial and resulted in manifest injustice. By this holding we do not mean to approve the verdict directing instructions submitted in this case as a model to be used in like cases. We hold that in the present case no plain error resulted.

Judgment affirmed.

CARL R. GAERTNER and KAROHL, JJ., concur.