**STATE of Missouri, Respondent,**

v.

**Arthur FORD, Appellant.**

No. 45367.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 31, 1984.

Michael L. Henderson, Clayton, for appellant.

John Ashcroft, Atty. Gen. by Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

Defendant was convicted by a jury of rape, sodomy and assault. He was sentenced to a total of 35 years. Defendant appeals. We affirm.

According to the state's evidence, on a Sunday morning, in late September, at approximately 3:30 a.m., the victim was waiting for a cab outside of a lounge in East St. Louis, Illinois. The defendant offered the victim a ride home. She accepted. Defendant got into the driver's side of a car, and the victim got into the passenger side, next to defendant. As defendant began driving, the victim noticed two men in the back seat of the car, one of whom put a gun to her head. Instead of taking the victim home, defendant drove to St. Louis and stopped the car inside a flood wall along the Mississippi River, in North St.

Louis, near East Grand Avenue. Defendant, along with the other two men, forced the victim into the back seat of the car, where they took turns raping and sodomizing her. Apparently, because they feared the police were coming, the three men ran from the car. Then, an object was thrown into the car, and the car immediately began burning. The victim crawled out of the burning car.

Police patrolling the area saw the burning car and noticed the disheveled victim across the road from the car. After talking to the victim, one of the officers put out a radio call for three Negro males, suspected of rape, armed with a shotgun, running west from East Grand. Within 2 to 4 minutes after receiving the call, about 5:20 a.m., another officer found defendant about one block from the scene of the crimes. Defendant was walking alone, west on East Grand, in a desolate and industrial area. He appeared nervous, was breathing heavily and was sweating, even though it was a chilly September morning.

Defendant was arrested, advised of his Miranda rights and, within 1 to 2 minutes, taken to the scene of the crimes. The victim was in an ambulance. She identified defendant within a minute, as he stood before her in the lights of the ambulance and the police car. Defendant's clothing was subsequently seized, and seminal stains were found on his shorts.

Defendant filed a motion to suppress the evidence of the seminal stains. This motion was denied. Defendant contends there was no probable cause for his arrest and, therefore, he argues, the evidence of the seminal stains should have been excluded as the product of an unlawful arrest. We disagree.

■ Defendant was tried jointly with a co-defendant, Calvin Tate. In his appeal, Tate raised this same issue of lack of probable cause for arrest. *State v. Tate*, 658 S.W.2d 940, 945 (Mo.App.1983). In *Tate*, this Court stated the general description of "three Negro males" did not establish probable cause to arrest Tate. The Court

held, however, that Tate's "close geographic and temporal proximity to the crime, the desolate nature of the area, and the fact that (defendant) was of the gender and race called for by the general description of the assailants leads this court to find that probable cause existed to arrest (defendant)." *Id.* at 946. Defendant here was found at the same time or sooner than Tate and even closer to the scene of the crimes.[1] He was nervous, breathing heavily and sweating even though it was a chilly morning. Thus, the facts here more strongly support the finding of probable cause for defendant's arrest than the facts did for Tate's arrest.

The trial court also denied defendant's motion to suppress the victim's in-court and out-of-court identifications of him. On appeal, defendant contends the denial of this motion was error. Defendant's arguments, however, are neither clear nor explicit. Apparently, defendant argues the in-court identification should have been excluded on either of two alternative grounds: (1) this identification was the fruit of an illegal arrest, or, (2) the identification was tainted by a prior improper suggestive confrontation.

■ Defendant again bases his argument of an illegal arrest on his contention the arrest was made without probable cause. As demonstrated, there was proba-

ble cause for the arrest, and, thus, this argument has no merit.[2]

■ Defendant's complaint that the in-court identification itself was improper is likewise without merit. "Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony ...', ... and reliability of the in-court identification testimony is to be assessed under the 'totality of the circumstances.'" *State v. Higgins,* 592 S.W.2d 151, 160 (Mo. banc 1979); *e.g., State v. Robinson,* 641 S.W.2d 423, 427 (Mo. banc 1982).[3] "Factors to be considered include: (1) [t]he opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *State v. Higgins, supra* at 160.

The victim here had ample opportunity to view defendant—in the lounge, outside the lounge and in the car during the ride and during the crimes. The victim specifically stated there was a sufficient light inside and outside the lounge for her to see defendant.

The victim was also attentive. She was not "drunk" or "high" when she left the lounge. The gun pointed at her head during the ride to St. Louis simply made more

---

1. Defendant was found within one block from the scene of the crimes. Tate was found six blocks away.

2. Moreover, under present law, a defendant's face is not a species of evidence suppressible as fruit of an illegal arrest. *State v. Taylor,* 630 S.W.2d 95, 96 (Mo.App.1981); *see also State v. Berry,* 609 S.W.2d 948, 952, n. 3 (Mo. banc 1980) and *United States v. Crews,* 445 U.S. 463, 477–479, 100 S.Ct. 1244, 1253–1254, 63 L.Ed.2d 537 (1980).

3. This is not to imply the show-up of defendant shortly after the crimes was unduly suggestive. Admittedly, some confrontations in which a single *suspect* is viewed in the custody of the police may be highly suggestive. *E.g., Foster v. California,* 394 U.S. 440, 442–43, 89 S.Ct. 1127, 1128–1129, 22 L.Ed.2d 402 (1969). Prompt confronta-

tions, however, promote fairness by assuring reliability. *E.g., Russell v. United States,* 408 F.2d 1280, 1284 (D.C.Cir.1969), cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

The show-up here took place under circumstances that show reliability. The show-up took place within minutes after the crimes, at the scene of the crimes. The victim had ample opportunity to view defendant at close range and in good lighting conditions. The victim was certain of her identification. The police made no overt act nor any statement suggesting defendant was the culprit.

In short, the confrontation was the result of good police work. It was not improper for them to return defendant, a freshly apprehended suspect, to the scene of the crimes for identification by the victim who had seen the culprit only minutes before. *See, e.g., State v. Dodson,* 491 S.W.2d 334, 338 (Mo. banc 1973).

acute her focus on the defendant's face, right next to her. Moreover, her perception of the facts was equally acute. Although understandably shaken, she was rational in describing the incident to the police immediately after the crimes.

The description given by the victim immediately after the crimes was general but indicated no inaccuracy. More important, defendant does not question the accuracy of this or later descriptions.

The victim was certain in her identification of defendant when confronted with defendant shortly after the crimes. The victim's identification of him did not take "even a minute." [4]

At most, there was only 15 to 20 minutes between the time the crimes were completed and the time the victim was confronted with the defendant. This short period of time between the crimes and confrontation insures the reliability of the identification. The face of a rapist and sodomizer is not likely to fade from the victim's memory within 20 minutes after he committed the crimes.

▮ This analysis eliminates of any doubt about the reliability of the victim's in-court identification of defendant.

Defendant next argues that testimony about another crime was admitted into evidence to his prejudice. The car found burning at the scene of the crimes was identified by a Michael Page as the car violently taken from him by three black men earlier that morning. Page also identified defendant in a line-up as one of the men who took his car. Defendant argues this identification related to a crime prior to the crimes in issue and, therefore, the identifications prejudiced him. We disagree.

▮ Evidence of another crime unrelated to the crime in issue may be prejudicial and, thus, inadmissible, because this evidence may result in a conviction based on a crime with which the defendant is not charged. *See, e.g., State v. Tribmle*, 638 S.W.2d 726, 732 (Mo. banc 1982). Exceptions have been made to this general rule. Evidence of another crime is admissible if it tends to establish "the identity of the person charged with the commission of the crime on trial." *Id.* at 732.[5] The key issue in this inquiry is relevance balanced against prejudice. The trial court exercises its discretion to determine whether the evidence of another crime is relevant and, if relevant, whether its possible prejudice outweighs its relevance. *E.g., State v. Shaw*, 636 S.W.2d 667, 672 (Mo. banc 1982); *see also State v. Reese*, 274 S.W.2d 304, 307 (Mo. banc 1954).

▮ Defendant here denied any involvement with the crimes in issue. He cannot and does not deny his identity was in issue. The identification of defendant by Page as one of the persons who took his car, the car in which the crimes took place, is, thus, relevant to establishing the identification of defendant as one of the culprits. We find the trial court did not abuse its discretion in admitting Page's identification testimony and, in effect, finding this testimony outweighed its possible prejudice. *See, e.g., State v. Brownridge*, 459 S.W.2d 317, 321 (Mo.1970).

Defendant also contends he was not brought to trial within 180 days of his arraignment, as required by former § 545.-780 RSMo 1978 (repealed June 7, 1984).[6]

---

**4.** The certainty of the show-up identification itself must be considered in the totality of circumstances. The circumstances insuring this certainty are set out in n. 3, *supra.*

**5.** The exceptions to the rule are usually stated as:

"evidence of other crimes is admissible only where it has a legitimate tendency to establish that the defendant is guilty of the immediate crime charged. Evidence thereof is admissible where it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial." *State v. Trimble, supra* at 732.

**6.** During the pendency of this appeal, former § 545.780 RSMo 1978 was repealed and a new § 545.780 was enacted. § 545.780 RSMo Supp. 1984. The new statute eliminates "both the 180-

**356** ■

Eliminating excludable days, the trial court found defendant's trial began 211 days after arraignment, but the court concluded the charges against defendant should not be dismissed. Defendant claims this conclusion was error. We disagree.

■ Under former § 545.780, if a delay exceeded the 180 days authorized by the statute and if the delay was "occasioned by the state," the trial court was authorized to dismiss charges "with or without prejudice at the discretion of the court." This statute also set out several factors the court must consider in exercising this discretion. § 545.780.5.[7] In a careful, precise, detailed and logical memorandum opinion, the trial court set out the factors it considered and the reasons it used in determining the charges here should not be dismissed. This decision is sensible and within the narrow discretion granted to the trial court by former § 545.780 RSMo 1978. *See State v. Evans*, 606 S.W.2d 789, 790–791 (Mo.App.1980); *see also State v. McClure*, 632 S.W.2d 314, 316 (Mo.App.1982). *See, e.g., State v. Richmond*, 611 S.W.2d 351, 355 (Mo.App.1980) (defining discretion granted trial court as being "narrow").

■ More important, perhaps, another trial judge, in the case below, granted the state a continuance for 45 days because the victim was hospitalized. This delay was not excluded in the trial court's calculation of the number of days from defendant's arraignment at trial. Former § 545.780.-3(2), however, excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." Although illness of an essential witness is not specifically listed as making that witness "unavailable," the statute does provide that "an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due

diligence ..." § 545.780.3(2). Common sense dictates that the legislature contemplated illness as precluding a witness' presence at trial from being obtained even by "due diligence." *See State v. O'Neal*, 639 S.W.2d 393, 395 (Mo.App.1982); *see also United States v. Faison*, 679 F.2d 292, 297 (3rd Cir.1982) (interpreting identical language in the Federal Speedy Trial Act, 18 U.S.C.A. § 3161(h)(3)(A) (1976)). By excluding this 45 day period due to the victim's hospitalization from the 211 days calculated by the trial court, the total includable days between defendant's arraignment and trial is 166 days, which, obviously, is within the statutory period of 180 days.

■ Defendant makes one more complaint. After the trial had begun, the trial judge declared a mistrial because of improper conduct by one or more jurors. A second trial began on the 60th day after the mistrial was granted. Former § 545.-780.4 provides that a new trial must commence within 60 days after a mistrial. Defendant claims this section does not apply because the mistrial was requested by the state. This argument has no merit. The statute does not distinguish mistrials granted by request of the state from those requested by the defendant or on the judge's own motion. *State v. Tate*, 658 S.W.2d 940, 947 (Mo.App.1983).

Judgment affirmed.

DOWD, C.J., and GALLAGHER, Special Judge, concur.

---

day rule and the need for explanations of all delays in the record." *State v. Collins*, 669 *S.W.2d* 933, 941 (Mo. banc 1984) (Welliver, J., dissenting) Under this new, more flexible statute, defendant here would not have been denied his statutory right to a speedy trial.

7. These factors are:
"The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this section and on the administration of justice."