**STATE of Missouri, Plaintiff-Respondent,**

v.

**Roger NOLAN, Defendant-Appellant.**

No. 14542.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 7, 1986.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Joplin, for defendant-appellant.

KEET, Senior Judge.

A jury found defendant guilty of first-degree sexual abuse of a girl, age eleven, § 566.100, RSMo 1978, alleged to have occurred April 15, 1983. The jury assessed and the court sentenced defendant to five years' confinement. We affirm. The jury could reasonably find the facts noted herein.

The victim first met defendant in the summer of 1982 at a local park, where she had taken her two little sisters to play. Defendant, there with his two daughters, then ages two and three, approached the girl and asked her if she would baby-sit for him. She said she would have to talk to her mother about it. The mother met the defendant three days later. With her mother's approval, the victim began baby-sitting for defendant at her home about a week or so later.

Shortly thereafter the victim and her family moved to an apartment across the hall from defendant's apartment. Within a short time a "relationship" developed between defendant and the mother. Later they combined the apartments by leaving the doors between them open. The victim's sisters (two older and two younger) and defendant's two daughters were shifted around to make best use of the space available. The mother and defendant slept in the same bed in one bedroom.

About two weeks after the apartments were combined, the first sexual abuse occurred. It continued, according to the victim, about every night or every other night. The defendant would go through the sleeping rooms of five of the girls to the room where one of his daughters and the victim slept (regularly in a tee-shirt, jean shorts, a training bra, and underwear) in the late evening or early morning hours, and pull down or remove the victim's shorts and underwear and push her training bra up and "mess" with her breasts, put his fingers and mouth in her vagina, and masturbate her. If the victim resisted, defendant would hit her on the top of the head and tell her to shut up. He threatened to kill her if she told anybody. When and if defendant's daughter who slept with the victim would awaken, defendant would throw a blanket over her head. After about six

months the families moved to a farm. The abuse continued. Sexual intercourse never occurred.

The mother first became aware of the abuse from a relative, and immediately questioned the victim, who confirmed the acts of sexual abuse. The mother then confronted defendant, who at first denied the accusations, but then broke down crying, admitted sexual contacts, and indicated he needed help. He and the mother tried to save their relationship and help the child by seeking out counseling from the Division of Family Services (DFS). The relationship between the two adults, as well as the living arrangements, ended in October or November 1983.

In April or May of 1983 DFS had received a "hot line" call[1] and promptly talked with defendant, who admitted sexual acts with the victim. The sexual abuse stopped for about a month but then resumed. Defendant had two counseling sessions.

In July 1984 DFS received a "hot line" call, from an adjoining county, regarding sexual abuse of some other children. In the investigation of that case the name of the victim in this case came up. A DFS worker went to defendant's home to investigate. *Miranda* warning was duly given by a deputy sheriff who accompanied the caseworker. Defendant corroborated the information which he had given DFS in 1983 as well as later events. He initially admitted to ten or twelve additional instances, but then, on tape, admitted to only four or five additional encounters.

At trial the state introduced, over defendant's objection, a book entitled "Show Me!", which purports to be a teaching aid for sex education of children.[2] The exhibit was passed to the jury, who "thumbed" through it. Its 176 pages contain sexually explicit photographs of nude children and discuss human sex organs, their sexual functions and characteristics, and masturbation. It pictures fondling between a young boy and young girl, both naked. Defendant's attorney asserted to the jury that the trial was not "the time and place to get into people's different opinions on what is proper sex education and what's not". Defendant testified that the book was presented to the girls as an instructive tool with the consent of and in the presence of the mother. In final argument, the state's attorney, over objection, characterized the book as a handbook for child abusers and pornographers. In cross-examining defendant, he had asked if it was such a handbook.

Defendant denies the charge of abuse. Testifying, he gave various reasons why he had made the admissions to the mother and the investigators even though they were not true. At no time before the filing of the criminal charge did he claim that he had not committed the alleged abuse.

Defendant's points relied on are: (1) The trial court erred in allowing certain testimony as to the 1984 "hot line" call regarding other sexual abuse by defendant, an offense with which he was not charged; and (2) The trial court erred in allowing the book into evidence because it was not relevant and the state's final argument on it was irrelevant and extremely prejudicial, as presented to the jury by the state, on the issues of guilt and punishment.

### The 1984 Hot Line

The defense counsel did not object when the prosecutor asked a caseworker about another case, but asked for a bench conference. Defendant's counsel claimed that the testimony would bring in evidence of another crime and he did not think it impor-

1. See § 210.145, RSMo 1978 (24–hour toll-free telephone capable of receiving reports of child abuse).

2. The book, described on its front sheet as "A Picture Book of Sex for Children and Parents" was published in German in 1974 and in English in 1975. On the title sheet is:

"Photography, Captions, Design—Will McBride
Explanatory Text—Dr. Helga Fleischhauer-Hardt
English Language Adaptation—Hilary Davies".

tant as to why the caseworker was there. The prosecutor asserted that it was important that the jury understand and hear that the "hot line" call had nothing to do with the victim in this case, was not as a result of any vindictiveness on the part of the mother, and that the "hot line" call was "where they got the confession". Defense counsel objected to evidence of another crime and that the jury was going to "wonder" why there was a "hot line" call in 1984. The court stated: "We'll let them wonder. You can bring out who it came from." The court then overruled the objection. The caseworker then testified that there was a "hot line" call in 1984 involving another girl, and that it also involved the defendant in the instant case. Defense counsel objected on the ground of hearsay. The court sustained. Defense counsel did not object to later testimony by the caseworker that she and the deputy sheriff had discussed with the defendant the "problems" involving the other family.[3]

Thus, the evidence was scant. No details were in evidence as to how, if at all, defendant was criminally involved in another case. Counsel did not mention the matter in summation.

Even assuming that the evidence was sufficient (which is doubtful) to link defendant with other sexual abuse, the question arises as to its admissibility. It is ordinarily true that evidence of crimes other than the one on which the accused is being tried is not admissible, but there are exceptions to the rule. Evidence of other crimes is logically relevant and hence admissible to establish motive, intent, absence of mistake or accident, a common scheme or plan, or the identity of the person charged. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954), cited by de-

fendant. The test of whether the evidence of other distinct crimes falls within one of the exceptions is whether it is logically relevant to the particular excepted purpose for which it is being introduced. *State v. Thompson*, 691 S.W.2d 322, 325 (Mo.App. 1985). Relevancy is established if the evidence logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue. *State v. Driscoll*, 711 S.W.2d 512, 516 (Mo.banc 1986). The trial court, being in a better position to balance the probative value and danger of the evidence, has broad discretion and should be overturned only if it abuses that discretion. *State v. Driscoll*, supra, at 516.

The testimony was directly relevant to establish how the caseworker became involved in the 1984 investigation which led to defendant's further confession. Compare *State v. Clay*, 686 S.W.2d 516 (Mo. App.1985) (Testimony offered in explanation of conduct rather than as proof of facts testified to is not inadmissible hearsay.) It was relevant on the contested issue of identity, *State v. Ford*, 677 S.W.2d 352, 355 (Mo.App.1984), and showed a common scheme or plan by defendant to sexually molest young girls. Compare *State v. Smith*, 694 S.W.2d 901 (Mo.App.1985).

■ The court did not abuse its discretion. The record reflects at most a weak inference that defendant had committed a separate crime. Moreover, the evidence was relevant in the respects noted above. Even if the testimony had been improperly admitted, reversal would not be warranted, because the facts the state had the burden of showing were strongly proved by other evidence. Compare *State v. Clay*, supra, at 518–519. The evidence shows no details

---

**3.** The only other thing in the record in regard to the hot line call was from another witness.

BY MR. TAYLOR:

Q How did you become involved in an investigation involving the defendant?

A On October the 17th, 1984, I was contacted by Family Services concerning a hot line call that they had received at the Roger Nolan residence.

Q What did you do in your investigation?

A I got with the Family Service worker and asked her the circumstances of the case, and they referred to this case that they had called about, and—

MR. JOHNSTON: Your Honor, I object to hearsay.

THE COURT: Well, be sustained.

BY MR. TAYLOR: Just don't mention about any other case.

of the unrelated crime, thus satisfying the requirements of *Reese,* supra, at 307; *State v. Alexander,* 706 S.W.2d 21 (Mo.App.1986) and *State v. Churchir,* 658 S.W.2d 35, 38 (Mo.App.1983). Its possible prejudice does not outweigh its relevance. Any prejudice resulting from the evidence was blunted by defendant's 1984 admissions. *State v. McDaniels,* 668 S.W.2d 230, 234 (Mo.App. 1984) (blunted by officers' testimony concerning defendant's spontaneous admissions following his arrest). Defendant's first point relied on is denied.

### The "Show Me" Book

The trial court is afforded broad discretion in determining admissibility of demonstrative evidence such as "Show Me!" and the photographs in it. Admission of such evidence is error only upon showing of abuse of discretion. *State v. LaRette,* 648 S.W.2d 96, 105 (Mo. banc 1983); *State v. Weekley,* 621 S.W.2d 256, 260 (Mo.1981).

A photograph is admissible if it corroborates testimony of the witnesses, connects the accused with the offense, provides identity of the victim or tends to prove any material elements in the case, *State v. Daugherty,* 631 S.W.2d 637, 641 (Mo.1982). Demonstrative evidence which tends to establish a fact in issue or throw light on the controversy is admissible if it aids the jury in arriving at a correct verdict. *State v. Burnfin,* 606 S.W.2d 629, 630 (Mo.1980). Photographs are admissible if they tend to show, as here, conditions existing at the time of the crime and enable a better understanding of how facts and circumstances detailed by witnesses bear upon material matters at issue. *State v. Brown,* 524 S.W.2d 188, 190 (Mo.App.1975).

If a photograph is relevant it is not excluded because it may be inflammatory unless the situation is so unusual (not the case here) that the extent of prejudice overrides the relevancy and probative value of the photograph. *State v. Jackson,* 499 S.W.2d 467, 472 (Mo.1973).

The trial court had broad discretion in weighing the other evidence of guilt (which, as recognized by defense counsel in his brief was strong) in deciding whether the book was so prejudicial to defendant that it should have been excluded.

Defendant was living with five young girls and his two daughters and sleeping with the mother. He showed the victim and one of her older sisters the book. It is reasonable to infer that the defendant, exhibiting the book several times, was aroused by the book itself and the girls. Defendant's evidence was to the effect that the victim sat on his lap and aroused him sexually, was seductive, and had "come on to him". He admitted to the mother that he might have a problem. Part of the problem may have been an improper interest in and use of the book. He agreed to have and did have counseling, which he apparently considered desirable. The book was relevant to show the relationship of the parties involved. *State v. Cole,* 581 S.W.2d 875, 877 (Mo.App.1979).

The jury could reasonably believe that he showed the victim the book to try to persuade her that sexual contacts gave pleasure and were not wrong and thereby make her more receptive. Defendant kept the book in a drawer, easily accessible to all the children. It would tend to create an atmosphere of sex consciousness, even if it were considered by some people as unobjectionable as a sex education tool. It was part of defendant's pattern of conduct. Compare *State v. Lue,* 598 S.W.2d 133, 137 (Mo. banc 1980).

The jury could reasonably find that defendant's display of the book to young girls of very short acquaintance and outside his family was inappropriate conduct indicating his preoccupation with sex, making it reasonable to believe that he took advantage of the victim.

Defendant testified at length in regard to the book as being a tool for sex education widely used in Europe. His attorney in final argument argued that it was a proper educational tool. This would reduce the impact of the book. Compare *State v. Driscoll,* supra, at 517.

The book was proper evidence on the issue of guilt or not, and on the issue of punishment. The trial court did not abuse its discretion. Defendant's second point relied on is rejected.

In determining admissibility of evidence, its probative value must not be outweighed by its tendency to create undue prejudice in the minds of the jury. *State v. Taylor*, 663 S.W.2d 235, 240 (Mo. banc 1984); *State v. Huston*, 660 S.W.2d 718 (Mo.App.1983); *State v. Diercks*, 674 S.W.2d 72, 78, 79 (Mo.App.1984). The trial court did not abuse its discretion in connection with the hot line call or the book, considered either separately or cumulatively. The judgment is affirmed.

PREWITT, C.J., MAUS, J., and DORMAN L. STEELMAN, Special Judge, concur.