STATE of Missouri, Respondent,

v.

David LANE, Appellant.

David LANE, Appellant,

v.

STATE of Missouri, Respondent.

No. 15788, 16542.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 1990.

---

**948**

Mary K. Anderson, Columbia, for appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

In a trial based on a five-count information, a jury found defendant David Lane guilty on three counts of sodomy, § 566.060,[1] and two counts of use of a child in a sexual performance, § 568.080, and he was sentenced to consecutive terms of imprisonment totaling 48 years. Defendant appeals, and that appeal is Case No. 15788. After the jury trial, defendant filed a motion under Rule 29.15 seeking post-conviction relief. That motion was denied without evidentiary hearing. Defendant appeals from that denial, and that appeal is

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Case No. 16542. The appeals have been consolidated and will be dealt with separately in this opinion.

## No. 15788

Defendant's points are, in general, that the trial court erred: (1) in submitting Instructions 12 and 14, the state's verdict-directing instructions with respect to the two charges (Count IV and Count V) of use of a child in a sexual performance, (2) in denying defendant's request for a mistrial based on certain remarks made by the prosecutor in her opening statement, (3) in receiving into evidence, over defendant's objection, certain photographs and magazines, and (4) in receiving into evidence, over defendant's objection, certain testimony of the mother of one of the victims.

The various offenses occurred repeatedly over several months beginning in December 1986 and ending in September 1987. The victims of the sodomy offenses were Christina, 7, Crystal, 9, and Penny, 11. Penny is defendant's daughter. The offenses occurred at defendant's mobile home in Springfield. During the months involved, Penny was a daytime baby-sitter for Christina. Crystal lived nearby and was a friend of the other two girls.

Defendant has not challenged the sufficiency of the evidence to support any of the convictions. The sordid record discloses that he committed many acts of sodomy on each of the three children and induced Penny and Crystal, on separate occasions, to engage in sexual performances. All three victims related to the jury graphic descriptions of defendant's felonious conduct.

■ Defendant's first point is that his rights under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution were violated by the action of the court in submitting Instruction 12 to the jury. Instruction 12 was the state's verdict-director under Count IV (use of Crystal in a sexual performance). Defendant contends that Instruction 12 sub-

jected him to double jeopardy "in that the ultimate issues of fact in Instruction 12 and Instruction 6 were the same." Instruction 6 was the state's verdict-director under Count I, (sodomy of Crystal).[2] Defendant has not challenged the form of Instruction 6 or Instruction 12.

The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. It is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

"The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' ... Where consecutive sentences are imposed at a *single criminal trial*, the role of the constitutional guarantee is limited to assuring that the court does not exceed its *legislative authorization* by imposing multiple punishments for the same offense." (Emphasis added).

*Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

In *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2540–2541, 81 L.Ed.2d 425 (1984) the court said:

"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, ... the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.... In the federal courts the

---

**2.** Defendant makes the same double jeopardy contention with respect to Instruction 14, the state's verdict-director under Count V (use of Penny in a sexual performance), and Instruc-
tion 8, the state's verdict-director under Count II (sodomy of Penny). That contention is rejected for the same reasons it is rejected with respect to Instructions 12 and 6.

test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), ordinarily determines whether the crimes are indeed separate and whether cumulative punishments may be imposed.... [T]he *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." (Citing authorities.)

The *Blockburger* test is, "[W]here the same act or transaction constitutes a violation of two distinct *statutory provisions*, the test to be applied to determine whether there are two offenses or only one is whether each *provision* requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). (Emphasis added.)

"The *Blockburger* test was developed 'in the context of multiple punishments imposed in a single prosecution.' ... In that context, 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 2090–2091, 109 L.Ed.2d 548 (1990). "The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged." (Emphasis in original.) *Grady*, 110 S.Ct. at 2093.

Accordingly, if the legislature authorized the co-existence of the convictions on Count I and Count IV, and their cumulative punishments, and this court so holds, there is no violation of defendant's double jeopardy rights under the U.S. Constitution.

In *State v. McLemore*, 782 S.W.2d 127, 128 (Mo.App.1989) the court said:

"Missouri's multiple offense limitation statute, § 556.041(1), prohibits multiple convictions for offenses arising from the same conduct when one offense is 'included in the other.' § 556.046.1(1) defines an included offense as one 'estab-lished by proof of the same or less than all the facts required to establish the commission of the offense charged.

Application of the double jeopardy analysis, under either the Fifth Amendment or the multiple offense limitation statute, thus requires determination of the facts necessary to prove each offense involved. *The analysis focuses upon the statutory elements of each offense, rather than upon the evidence actually adduced at trial.*" (Emphasis added.)

To similar effect see *State v. Pacchetti*, 729 S.W.2d 621, 624–626 (Mo.App.1987).

"A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than 14 years old." § 566.060.3. As used in § 566.060.3, " 'Deviate sexual intercourse' means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010(2).

"A person commits the crime of use of a child in a sexual performance if, knowing the character and content thereof, the person employs, authorizes, or induces a child less than seventeen years of age to engage in a sexual performance...." § 568.080.1. " 'Sexual performance' [means] any performance, or part thereof, which includes sexual conduct by a child who is less than seventeen years of age." § 556.061(29). " 'Sexual conduct' means acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification." § 556.061(27).

The sodomy conviction on Count I was based on § 566.060.3. The conviction on Count IV was based on § 568.080.1, using a child in a sexual performance.

In addition to requiring proof of other elements, § 566.060.3 requires proof that the victim is a person to whom the defendant is not married. No such proof is required by § 568.080.1, defining use of a child in a sexual performance.

In addition to requiring proof of other elements, § 568.080.1 requires proof that the victim "engage[d] in a sexual performance." In *State v. George*, 717 S.W.2d 857 (Mo.App.1986), this court discussed the term "sexual performance," as defined in § 556.061(29) and as used in § 568.080.1. Section 566.060.3 does not require proof of a sexual performance.

Thus, each of the two statutes, § 566.060.3 and § 568.080.1 requires proof of a fact which the other does not. Accordingly, under the *Blockburger* test, there are two offenses. The definition of "included offense" found in § 556.046.1(1) is not met, and defendant receives no benefit from § 556.041(1). Defendant makes no claim that co-existence of the two convictions was proscribed by § 556.041(2), (3) or (4).

Defendant's first point has no merit.

█ Defendant's second point is that the trial court erred in "failing to grant" a mistrial based on certain remarks made by the prosecutor in her opening statement. Defendant contends that the remarks concerned sexual devices which were "previously excluded by the trial court pursuant to defendant's motion in limine," and that "the sexual devices referred to were never admitted into evidence and served to improperly bias and prejudice the jury."

The statement of facts portion of defendant's brief makes no mention of any portion of the prosecutor's opening statement concerning sexual devices and, indeed, makes no mention of that statement or any portion of it. This point has not been preserved for appellate review. See Rule 30.-06(c). This court, in its discretion, gratuitously reviews the point for possible plain error.

During the prosecutor's opening statement the following occurred:

"[Prosecutor]: [T]he girls, both Christina and Crystal, will tell you that the Defendant showed them pornographic pictures and even showed them and used, on occasion, sexual devices, specifically—

[Defense Counsel]: Your Honor. I'm going to object at this time. May we approach the bench?

.        .        .        .        .

(Whereupon, counsel for the State and counsel for the Defendant are at the bench for a conference outside the hearing of the jury as follows:)

[Defense Counsel]: Your Honor, again, I would object to the reference the Prosecutor has made to pornographic materials and sexual devices.

I filed a motion before trial asking that those items be excluded, and I believe that was sustained. There's not been a proper showing that that information or that evidence is relevant.

I think the jury has been prejudiced by it, and I don't think you can ring the bell and take it out of their minds like the Prosecutor said. And I'm going to ask for a mistrial at this time.

[Prosecutor]: I would ask the Court to defer ruling. I believe that this evidence will come out as I've indicated, that it will be shown to be relevant and part of the ongoing matter of the conduct of the Defendant.

I do apologize. As I began speaking, I was thinking in terms of the suppression motion and not of the previous motion that you had sustained. I do apologize for that, but I do believe it would be found relevant and that there will be no error.

The Court: Well, at this time, the Court will sustain the objection to the statement of the prosecutor and ask the prosecutor not to refer to that until there's been a ruling on that particular topic, and I'll defer ruling on the motion for mistrial at this time.

(Proceedings return to open court.)

The Court: The Court will instruct the jury to disregard the last remark of counsel. Let's proceed."

Later on the first day of the jury trial, the trial court, outside the hearing of the jury, received evidence on defendant's motion to suppress and sustained that motion with respect to certain sexual devices

which had been found in defendant's mobile home by officers executing a search warrant.

Defendant does not direct this court's attention to any portion of the trial transcript where the trial court made a specific ruling on his motion for mistrial. "In order to preserve an allegation of error proper objection must be promptly made and there must be an adverse ruling. *State v. Holland*, 530 S.W.2d 730, 733[2] (Mo.App. 1975). As indicated earlier, this court confines its review to possible plain error.

In *State v. Brooks*, 618 S.W.2d 22 (Mo. banc 1981), defendant asserted that the trial court erred in failing to sustain his motion to strike certain statements of the prosecutor made during the course of the prosecutor's opening argument. The court said, at 24:

"[T]he scope and manner of opening statement is largely within the discretion of the court which necessarily must rely upon the good faith of counsel in making opening statements to a jury as to material facts they intend to prove.... The question of whether the trial court abused its discretion in limiting opening statement is examined against a standard different from that employed in a search for error stemming from evidentiary rulings during trial. When the issue concerns the trial court's exercise of discretion relative to opening statements, no error requiring reversal will be found if a challenged statement refers to arguably admissible evidence and the reference was made in good faith with a reasonable expectation the evidence will be produced."

At the time the prosecutor made the statement, defendant's motion to suppress had not been ruled upon. The statement of the prosecutor, at the time it was made, referred to "arguably admissible evidence," and the reference was made in good faith with a reasonable expectation the evidence would be produced. The trial court properly instructed the jury to disregard the statement. After the court had deferred ruling on the motion for a mistrial, defense counsel made no request for a ruling on that motion. The declaration of a mistrial is a drastic remedy. A review of the entire record discloses no plain error. Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in receiving into evidence, over his objection, state's Exhibits 14, 15 and 16, "consisting of magazines depicting unclothed adult females," in that "any probative value which these exhibits may have had was clearly outweighed by their prejudicial effect," and the exhibits "improperly fanned the flames of prejudice and bias in the minds of the jury."

State's Exhibits 14, 15 and 16 were all so-called "adult" magazines. Exhibit 14 is entitled "Hustler," Exhibit 15 is entitled "Dildo Babes," and Exhibit 16 is entitled "Young and Shaved." All depict adults, most of them female, engaged in various sexual activities.

Christina testified that she had seen all three exhibits at the defendant's house. Crystal testified that she had seen Exhibits 15 and 16 at defendant's house.

With regard to Exhibit 16, Crystal said that the defendant showed it to her and "told us to lay like that." Referring to Exhibit 15, Crystal testified that defendant "showed me this one and he told us to do that, too. He showed us those in the book."

A deputy sheriff testified that pursuant to a warrant he searched defendant's mobile home and found Exhibit 14 under defendant's bed, Exhibit 15 in a drawer in defendant's bedroom, and found Exhibit 16 in defendant's bedroom.

"The trial court is vested with broad discretion in ruling questions of relevance of evidence and, absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling." *State v. Brown*, 718 S.W.2d 493–494[1] (Mo. banc 1986). "Admission of evidence complained of as prejudicial or inflammatory rests within the sound discretion of the trial judge. The standard of relevance is the main criterion.... Relevancy is found if the evidence logically tends to support or establish a fact in is-

sue." *State v. Berry,* 609 S.W.2d 948, 954[16–17] (Mo. banc 1980).

In *State v. Nolan,* 717 S.W.2d 573 (Mo. App.1986), this court, on appeal by defendant from a conviction of first degree sexual abuse of an 11–year–old girl, rejected defendant's contention that the trial court erred in receiving into evidence a book containing sexually explicit photographs of nude children. There was evidence that defendant had shown the book to the victim "to persuade her that sexual contacts give pleasure." Holding that the "book was proper evidence on the issue of guilt or not," this court said, at 577: "The jury could reasonably find that defendant's display of the book to young girls of very short acquaintance and outside his family was inappropriate conduct indicating his preoccupation with sex, making it reasonable to believe that he took advantage of the victim."

This court holds the trial court did not abuse its discretion in admitting into evidence Exhibits 14, 15 and 16. Defendant's third point has no merit.

■ Defendant's fourth point is that the trial court erred in receiving into evidence photographs of defendant, identified as state's Exhibits 19A, 19B, 19D and 19E. Defendant asserts that the photographs "depict defendant in his underwear," and that "any probative value which these photographs may have had to shed light on any material issue was clearly outweighed by their prejudicial effect, as the photographs were obviously taken in a correctional institution, they portrayed defendant in an unnecessarily embarrassing and humiliating fashion, and they were taken in a manner intended to inflame the passions of the jury."

Crystal testified that defendant is shown in Exhibits 19A and 19B. Exhibit 19A shows defendant standing in what appears to be a locker room. He is wearing undershorts but is otherwise naked. The photograph shows a tattoo in the middle of his chest. Exhibit 19B is a closeup of defendant from the waist down and shows tattoos above both knees. Crystal further testified that she recognized the tattoos shown in Exhibit 19B.

Christina testified that Exhibit 19D showed a scar and tattoos which she had seen on defendant's body, and that Exhibit 19E also showed the tattoos and scar. Crystal identified Exhibits 19D and 19E as showing a scar on defendant's chest.

When the state offered Exhibits 19D and 19E, defense counsel said, "I have no objection." The trial court properly received into evidence Exhibits 19D and 19E in view of defense counsel's statement.

Exhibits 19A and 19B, showing scars and tattoos on defendant's body, supported the testimony of the two young girls that they had seen such markings on defendant's body during the commission of the offenses on trial.

■ The trial court has broad discretion in the admission of relevant photographs and a photograph is not rendered inadmissible because other evidence may have described what is shown in the photograph. *State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987). Generally, a photograph is admissible if it corroborates testimony of the witnesses, connects the accused with the offense, or tends to prove any material elements in the case. *State v. Nolan,* supra, 717 S.W.2d at 577.

This court has examined Exhibits 19A and 19B in light of defendant's assertion that they were prejudicial and inflammatory. The trial court did not abuse its discretion in receiving into evidence Exhibits 19A, 19B, 19D and 19E. Defendant's fourth point has no merit.

■ Defendant's fifth point is that the trial court erred in receiving into evidence testimony from the mother of Christina "about statements made to her by Christina and Penny as to acts allegedly committed upon them by defendant." Defendant contends that such statements "were inadmissible hearsay" and were "extra-judicial statements offered to prove the truth of what Christina and Penny had told the witness, and were not spontaneously made but rather were elicited from the mother's questions."

Testifying as a state's witness, Christina's mother testified that she first became aware that "something unusual" was going on at defendant's trailer in September 1987. She testified that Christina told her "Mom, I don't want to go up there. I've had enough." She said that Christina previously had expressed reluctance to go there but this time she was more adamant and that she eventually told the witness why she did not want to go.

The foregoing testimony was received without objection. The following then occurred:

"Q. [Prosecutor]: When you say eventually, describe the manner in which she told you what happened.

A. She was reluctant, scared, but she indicated that—

[Defense Counsel]: Your Honor, I think I should make an objection on hearsay grounds at this point. There's been no showing, not an adequate showing, that any examination would apply."

The court overruled the objection.

The witness then testified, without objection, that Christina said she was definitely afraid to go up to the trailer. The following testimony was then received without objection:

"Q. Did you have any other idea what the nature was and the things that were wrong—without going into specific details, can you tell me the general nature of the things that you believed to be wrong?

A. I had believed that some kind of a sexual occurrence had occurred."

The mother also testified that the next day she talked to Penny. The following then occurred:

"Q. All right. Now, what, if anything, did you say to Penny?

A. We just had a talk, kind of a mother-and-daughter-type talk.

[Defense Counsel]: Your Honor, again, I'm going to object to what Penny might have told her, that would definitely be hearsay.

[Prosecutor]: Your Honor, again, Mrs. Girth is essentially an outcry witness, also, from Penny, and we are using her in that capacity, really, to establish that, in fact, an outcry was made by Penny at that time and, furthermore, to explain what it is that Mrs. Girth did subsequent to that. I don't intend to elicit any details at this time.

The Court: Overruled as to the specific question. Go ahead.

Q. [Prosecutor]: Now, what had you talked to Penny about in terms of this, without going into any great detail in terms of this mother-daughter relationship?

A. Penny and I were fairly close, and I just asked her a few questions.

Q. Concerning what?

A. Concerning what Christina had told me. I asked her outright if it was true. At that point, she broke down and told me more—

Q. All right. Did she, in fact, confirm what Christina had said to you?

A. Yes."

The challenged testimony did not go into details of the sexual occurrences which were so vividly described to the jury by the three young victims. In *State v. Creviston*, 735 S.W.2d 91 (Mo.App.1987), a case involving sodomy of a 5–year–old girl, this court held that the trial court did not err in receiving into evidence testimony of the victim's mother, over defendant's hearsay objection, to the effect that the victim told her mother that defendant had touched her "twinkie" and told her not to tell anyone what happened. This court said, at p. 96: "The challenged testimony of the mother was merely cumulative of the trial testimony given by [the victim] herself."

The trial court did not commit prejudicial error in receiving the challenged testimony. *State v. Robinson*, 484 S.W.2d 186, 189 (Mo.1972); *State v. Ball*, 622 S.W.2d 285, 290[11] (Mo.App.1981); *State v. Hankins*, 612 S.W.2d 438, 440[3] (Mo.App.1981). It is unnecessary to determine whether the witness's testimony was admissible under § 491.075.

Defendant's fifth point has no merit.

The judgment is affirmed.

No. 16542

Defendant filed no brief on this appeal and made no claim of error with reference thereto in his brief in No. 15788. Defendant thereby abandoned this appeal. *State v. Mayo*, 784 S.W.2d 897[1] (Mo.App.1990).

Appeal in No. 16542 dismissed.

HOGAN, C.J., and MAUS, J., concur.